United States District Court
Southern District of Texas
**ENTERED**
November 01, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2011-C2, § § § § § § § § § Plaintiff, § § VS. § § DEERBROOK MALL, LLC, § § Defendant. § | CIVIL ACTION NO. H-21-1519 |

**MEMORANDUM OPINION AND ORDER**

Deerbrook Mall is a retail mall in Harris County, Texas. (Docket Entry No. 1, at 1). On April 1, 2011, Deerbrook entered into a Loan Agreement with Morgan Stanley Mortgage Capital Holdings, LLC, to borrow money to operate and manage the mall. (Docket Entry No. 11, at 2; Docket Entry No. 11, Ex. 1). The loan maturity date was April 6, 2021. (Docket Entry No. 11, at 2). Deerbrook defaulted on the loan after "fac[ing] challenges associated with the COVID-19 pandemic." (*Id.*, at 2, 3). Wells Fargo Bank is the current lender under the Loan Agreement.

Five days before the scheduled foreclosure sale on the property, Deerbrook paid the loan in the full amount Wells Fargo demanded. Deerbrook now moves, over two months after it paid Wells Fargo the $129,081,667.38, for leave to amend its pleadings to file a counterclaim seeking a declaratory judgment "that the liquidation fee and attorneys' fees included by [Wells Fargo] in the loan payoff [were] unreasonable." (Docket Entry No. 11, at 7). Wells Fargo responded and Deerbrook replied. (Docket Entries Nos. 12, 13). Based on the parties' briefs and the applicable

law, the court denies Deerbrook's motion to amend. The reasons are set out below. The court orders the parties to submit proposed final judgment, or a statement identifying remaining issues and a proposed schedule to resolve them, no later than November 15, 2021.

I.     **Background**

When Deerbrook defaulted on the loan on April 6, 2021, Wells Fargo could not immediately foreclose because of a COVID moratorium on nonjudicial foreclosure sales in Harris County. (Docket Entry No. 11, at 3; Docket Entry No. 12, at 2). To "protect [its] secured collateral," Wells Fargo sued Deerbrook in Texas state court, seeking the appointment of a receiver to take possession of the mall. (*Id.*). Deerbrook timely removed to federal court.

While the receivership motion was pending, the foreclosure moratorium ended, and Wells Fargo scheduled the foreclosure sale for June 1, 2021. (*Id.*). Six days before the foreclosure sale, on May 26, 2021, Deerbrook requested a payoff statement from Wells Fargo. (Docket Entry No. 12, Ex. A-3, at 2). Wells Fargo provided the payoff statement the next day. (*Id.*).

The statement showed that Deerbrook could pay the loan, preventing the foreclosure sale, for a total of $129,081,667.38. (*Id.*, at 4). The payoff statement detailed the expenses making up the total amount, including $1,000,000 for "Misc. Fees-Liquidation Fee." (*Id.*). The payoff statement did not break out the amount of legal fees, but counsel for Wells Fargo separately informed Deerbrook that the "final number for lender's legal fees" was $198,060.93. (*Id.*, at 1).

Deerbrook agreed to pay the amount in full. Before receiving the payoff statement, Deerbrook's counsel wrote to Wells Fargo, "Our client and borrower/debtor Deerbrook Mall, LLC agrees to pay the above referenced loan and outstanding indebtedness in full which is presently in default with any applicable interest, late charges *and fees* due and owing and will do

so by this coming Friday, May 28, 2021." (*Id.*, at 4 (emphasis added)). Deerbrook also represented to this court during a May 27, 2021, status conference that it was ready, willing, and able to pay the outstanding loan amount and wire the money immediately.

At no point before or after receiving the payoff statement did Deerbrook express reservations about the payoff amount, including the liquidation and legal fees. Instead, Deerbrook wired payment on May 27, 2021, without reservation, objection, or qualification. (Docket Entry No. 12, Ex. A-5).

Over two months after paying the $129,081,667.38, Deerbrook seeks to file a counterclaim for a declaratory judgment against Wells Fargo, claiming that the liquidation and legal fees included in the payoff were unreasonable and violated the Loan Agreement. (Docket Entry No. 11).

## II. The Legal Standard for a Motion to Amend

The court generally gives a requesting party the chance to amend before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The court may, however, deny a motion for leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 314–15 (5th Cir. 1996).

An amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). To determine if an amendment is futile, the court should "apply the same standard of legal sufficiency as applied under Rule 12(b)(6)." *Id.* (citation omitted). "[A] court may grant a

motion made under Rule 12(b)(6) if the complaint requests relief that is 'barred by an affirmative defense.'" *HEI Resources, Inc. v. S. Lavon Evans, Jr. Operating Co., Inc.*, No. 5:09-CV-124, 2011 WL 1230338, at *3 (S.D. Tex. 2011) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

### III. Analysis

Deerbrook seeks to amend to allege that the Loan Agreement required it to pay only "reasonable expenses" and permits Deerbrook to seek a declaratory judgment "[i]n the event that a claim or adjudication is made that [Wells Fargo] or its agents have acted unreasonably." (*Id.*, at 5–6 (quoting Docket Entry No. 11, Ex. A, at § 10.13); *id.* at 7 (quoting Docket Entry No. 11, Ex. A, at § 10.12)).

Deerbrook asserts that the $1,000,000 liquidation fee was unreasonable because the fee was not mentioned in the Loan Agreement, but only in a "Pooling and Servicing Agreement," to which Deerbrook was not a party. Deerbrook also asserts that "it is questionable that a liquidation fee would be appropriate, given that there was no liquidation of the Mall. The liquidation fee [wa]s not reasonable, but rather an unenforceable penalty." (*Id.*, at 11).

Deerbrook asserts that the $198,060.93 legal fees was unreasonable because "the redacted attorneys' fee invoices . . . include[d] fees from prior to Deerbrook's default, fees for environmental site assessments, and significant fees for pursuing receivership while at the same time seeking foreclosure of the Mall." (*Id.*). "Deerbrook contests the reasonableness and applicability of these alleged fees." (*Id.*, at 3, 4, 11).

Wells Fargo responds that Deerbrook's proposed counterclaim is futile for three reasons. (Docket Entry No. 12, at 3). First, Wells Fargo argues that Deerbrook's "proposed counterclaim for declaratory judgment is barred by the voluntary payment doctrine." (Docket Entry No. 12, at

4

5). "The voluntary payment doctrine 'bars recovery of payments voluntarily made with full knowledge of the facts, in the absence of fraud or mistake of material fact or law.'" (*Id.* (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156, 760 N.Y.S.2d 726, 727 (2003)). Because Deerbrook made the full payoff amount "without any objection, challenge, or reservation of rights," Wells Fargo asserts that the voluntary payment doctrine forecloses Deerbrook's counterclaim. Second, Wells Fargo argues that the "liquidation fee [was] authorized in the Loan Documents," contrary to Deerbrook's assertion that the liquidation fee was not part of the Loan Agreement. (*Id.*, at 12). Third, Wells Fargo argues that the "legal fees [were] patently reasonable" because "[n]one of the hourly rates charged by [Wells Fargo's] attorneys exceeded $650," and because it was Deerbrook's "refusal to pay off the loan or otherwise cooperate for several months following the loan's April 6 maturity [that] caused [Wells Fargo] to incur the legal fees that [Deerbrook] voluntarily paid." (*Id.*, at 10, 11).

After reviewing the briefs, this court asked the parties to submit supplemental letter briefs addressing whether Deerbrook's counterclaim is futile because the declaratory judgment action does not satisfy Article III's case-or-controversy requirement. (Docket Entry No. 16).

Wells Fargo's arguments that the liquidation fee and legal fees were reasonable payoff expenses raise disputed issues of fact. The Loan Agreement provides that reasonable expenses may include "liquidation fees," but only "to the extent" it is "incurred on account of an Event of Default." (Docket Entry No. 11, Ex. A, at § 10.13). Deerbrook argues, in part, that the liquidation fee was unreasonable "given that there was no liquidation of the Mall." (Docket Entry No. 11, at 11). Wells Fargo also argues that the attorneys' fees were objectively reasonable, representing three months of "investigation, enforcement, and related legal work . . . due to [Deerbrook's] default on its $154 million loan." (Docket Entry No. 12, at 10). But

5

Deerbrook responds that the legal fees included "fees from prior to Deerbrook's default" and "fees from environmental site assessments." The court cannot conclude, based on the alleged facts, that the liquidation and legal fees were reasonable as a matter of law. Deerbrook's proposed counterclaim is not futile on this ground.

Deerbrook's proposed amendment is, however, futile if the court would lack jurisdiction to hear the claim, or if the voluntary payment doctrine would bar the counterclaim. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking . . . declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. . . . To obtain [a declaratory judgment] for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). Declaratory relief for past wrongs is limited because "[t]he declaratory judgment vehicle . . . is intended to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989).

The parties agree that on May 27, 2021, Deerbrook paid the liquidation fee and attorneys' fees that Deerbrook now disputes as unreasonable. The alleged harm—the payment of unreasonable fees—occurred before Deerbrook sought declaratory relief. To obtain a declaratory judgment for a past harm, Deerbrook must demonstrate a continuing harm or a real and immediate threat of repeated injury in the future. Deerbrook has not alleged facts showing either and cannot do so. The "parties business relationship ended when the loan was paid off and the lien was released." (Docket Entry No. 18, at 2). The fee payment was a one-time past event, with no likelihood of repetition in the future.

6

Deerbrook alleges that a declaratory judgment action can nonetheless proceed when "payment is made but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." (Docket Entry No. 17, at 2 (quoting *Altaver v. Freeman*, 319 U.S. 359, 365 (1943)). There is no plausible allegation that Deerbrook made the payments involuntarily or under coercion. The foreclosure sale was scheduled for June 1, 2021. (Docket Entry No. 12, at 2). Deerbrook completed the payment on May 27, 2021, the same day that Wells Fargo provided Deerbrook with the payoff statement, and five days before the foreclosure sale. (*Id.*). The parties had met with this court that same day and had another status conference scheduled for the next day. If Deerbrook had issues with the liquidation and legal fees, Deerbrook could easily have brought the issue to the court and Wells Fargo's attention the next morning, on May 28, 2021, at the scheduled status conference. (*Id.*, at 3). Deerbrook did not. Instead, it paid, with no objection or reservation.

Deerbrook has not "demonstrate[d] that a case or controversy exists to meet the Article III standing requirement" to seek declaratory relief. *Bauer*, 341 F.3d at 358. Its proposed amendment is futile.

Even if the proposed declaratory judgment action could meet Article III's case or controversy requirement, Deerbrook's claim would be barred by the voluntary payment doctrine. "The voluntary payment doctrine precludes a [party] from recovering payments 'made with full knowledge of the facts' and with a 'lack of diligence' in determining [its] contractual rights and obligations." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 27 (App. Div. 2002)); *see also BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 765 (Tex. 2005).

7

The voluntary payment doctrine is not uniformly applied. The doctrine is a common law defense in some states and codified by statute in others. *See, e.g.*, *Wurtz v. Rawlings Co., LLC*, No. 12-CV-01182, 2014 WL 4961422, at *6 (E.D.N.Y. Oct. 3, 2014) ("The voluntary payment doctrine is an affirmative defense, and therefore, its applicability must be apparent on the face of the complaint to warrant dismissal under Rule 12(b)(6)); *Putnam-Greene Fin. Corp. v. AT&T Corp.*, No. 3:19-CV-177, 2020 WL 1915276, at *2 (N.D. Ga. Apr. 20, 2020) (noting that Georgia has codified the voluntary payment doctrine). In some states, the voluntary payment doctrine does not apply to breach of contract actions, and in others, it does. *See Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-CV-260, 2007 1114045, at *4 (M.D. Fla. Apr. 12, 2007).

"A federal court applies the choice-of-law rules of the forum in which it sits." *Goldman Sachs Specialty v. Brooks*, No. H-09-01547, 2011 WL 1750681, at *4 (S.D. Tex. 2011) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under Texas choice-of-law rules, a court ordinarily defers to the parties' choice of law set out in a contract." *Id.* (citing *In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546 (Tex. 2002)). In its response to Deerbrook's motion to amend, Wells Fargo noted that "[t]he Loan Agreement contains a New York choice-of-law provision." (Docket Entry No. 12, at 6 n.3). The Loan Agreement states, in relevant part: "This agreement and the obligations arising hereunder shall be governed by and construed in accordance with, the laws of the State of New York." (Docket Entry No. 11-3, at § 10.3). New York law governs this dispute. *See Brooks,* 2011 WL 1750681, at *4; *Awards Depot, LLC v. Trophy Depot, Inc.*, No. H-18-1838, 2018 WL 5791958, at *4 (S.D. Tex. 2018).

Under New York law, the voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of

8

material fact or law." *Dillon*, 790 N.E.2d at 1156, 260 N.Y.S.2d at 727. The principle behind the doctrine is that "[t]he onus is on a party that receives what it perceives as an improper demand for money to 'take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." *DRMAK Realty LLC v. Progressive Credit Union*, 133 A.D.3d 401, 403, 18 N.Y.S.3d 618, 621 (N.Y. App. Div. 2015).[1]

Wells Fargo argues that Deerbrook cannot now protest the payment that it made two months ago "without any objection, challenge, or reservation of rights." (Docket Entry No. 12, at 6). While the voluntary payment doctrine "can be overcome by a timely protest," Deerbrook did not protest before payment. *Beltway 7 & Props., Ltd. v. Blackrock Realty Advisers, Inc.*, 167 A.D.3d 100, 104, 90 N.Y.S.3d 3, 6 (2018). And, while the voluntary payment doctrine does not apply to payments made under "economic duress," Deerbrook cannot plausibly allege that it was under duress. It made the payment five days before the foreclosure sale, and with a court status conference already scheduled for the next day, at which time it could have raised any concerns that it had about the liquidation fees and attorneys' fees before wiring the payment. *Id.* at 6.

Deerbrook argues that the voluntary payment doctrine does not apply to a claim for a declaratory judgment but does not provide any case support for this proposition. (Docket Entry No. 13, at 5). This court ordered Wells Fargo to respond in a supplemental letter brief to Deerbrook's assertion that the voluntary payment doctrine cannot apply to a declaratory judgment claim. (Docket Entries Nos. 14, 15). Wells Fargo directed this court to *Beltway 7 & Properties, Ltd. v. Blackrock Realty Advisers, Inc.*, 167 A.D.3d 100, 90 N.Y.S.3d 3 (App. Div.

---

[1] The same principle exists in tax law. *See, e.g., Level 3 Commc'ns, LLC v. Essex Cnty.*, 129 A.D.3d 1255, 1256–57, 11 N.Y.S.3d 334, 336 (App. Div. 2015) ("To recover payments made under a mistake of law . . . a taxpayer is required to show that the payment were made involuntarily. This requirement ensures that governmental entities have notice that they may need to provide for tax refunds.").

2018). In that case, the Appellate Division, First Department, affirmed the district court's holding that the voluntary payment doctrine barred a plaintiff's "cause of action" for "a declaratory judgment that the late charge and additional interest were unenforceable as penalties," in addition to other claims. *Id.* at 5–6. That case instructs that the voluntary payment doctrine may, in at least some cases, apply to declaratory judgment actions.

New York law provides that the voluntary payment doctrine "bars *recovery* of payments voluntarily made with full knowledge of the facts." *Dillon*, 760 N.Y.S. at 727 (emphasis added); *Spangola*, 574 F.3d at 72 ("The voluntary payment doctrine precludes a plaintiff from *recovering* payments . . . ." (emphasis added)); *Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*, 118 A.D.2d 532, 535, 499 N.Y.S.2d 435, 438 (App. Div. 1986) ("The traditional rule is that a voluntary payment made with full knowledge of the facts cannot be recovered because it was made pursuant to a mistake of law."); *WFE Ventures, Inc. v. GBD Lake Placid, LLC*, --- N.Y.S.3d ---, 2021 WL 3553495 (App. Div. 2021) ("The doctrine . . . essentially prevents the paying party from thereafter changing his or her mind by seeking to recoup that payment voluntarily made under those circumstances.").

Deerbrook concedes that its purpose in seeking to file the counterclaim is to recover some of the money that it paid to Wells Fargo. (*See* Docket Entry No. 17, at 3 ("If such a finding of unreasonableness is made, Deerbrook may obtain a judgment against the Lender for the return of the funds."); *id.*, at 4 ("What remains is the determination of reasonableness, which can be conclusively decreed through declaratory judgment, and will concretely determine the parties' respective legal rights as to the contested amounts.")). The voluntary payment doctrine also bars this action for declaratory relief.

Even if Texas state law governed this dispute—under the Loan Agreement's clause that "the provisions for the creation, perfection, and enforcement of the liens and security interests created pursuant hereto . . . shall be governed by and construed according to the law of the state in which the property is located"—the result is the same. (Docket Entry No. 11-3, at § 10.3). Texas law, like New York, bars the recovery of "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion." *BMG Direct Mktg., Inc.*, 178 S.W.3d at 768 (quoting *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (1951)); *cf. Salvaggio v. Houston Indep. Sch. Dist.*, 709 S.W.2d 306, 308 (Tex. App. 1986) (The voluntary payment doctrine barred the plaintiffs' claim for a declaratory judgment that the defendants illegally collected tax penalties). Deerbrook cannot amend its complaint to assert a counterclaim for declaratory relief with the purpose of recovering money that it voluntarily paid to Wells Fargo.

**IV.    Conclusion**

Deerbrook's motion to amend and file a counterclaim for declaratory judgment, Docket Entry No. 11, is denied. The parties must file a proposed final judgment or statement of remaining issues and a proposed schedule to resolve them, no later than November 15, 2021.

SIGNED on November 1, 2021, at Houston, Texas.

```
                              _____
                                      Lee H. Rosenthal
                              Chief United States District Judge
```

11